UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. ERICKSON,<br><br>              Plaintiff,<br>   v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>              Defendant. | Case No. EDCV 09-484-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly evaluated the lay witness testimony, as warranted by the remand order;
2. Whether the ALJ properly considered the opinion of the consultative physician;
3. Whether the ALJ properly considered Plaintiff's testimony and properly assessed his credibility, as warranted by the remand order;
4. Whether the ALJ considered Plaintiff's obesity;[3] and
5. Whether the ALJ properly determined that Plaintiff can perform other types of substantial gainful work existing in the national economy.

(JS at 2-3, 17.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The

---

[3] Plaintiff appears to argue that the ALJ failed to consider his obesity within the credibility claim. (JS at 17.) The Court will discuss this claim in a separate section.

1 | Court must review the record as a whole and consider adverse as well as
2 | supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).
3 | Where evidence is susceptible of more than one rational interpretation, the
4 | Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452
5 | (9th Cir. 1984).

### III.
### DISCUSSION

**A.   The ALJ Properly Considered the Lay Witness Testimony.**

Plaintiff contends the ALJ failed to comply with the remand order when he selectively considered statements of the lay witness, Neva Gleason. (JS at 3-5.) Plaintiff argues that the ALJ erroneously omitted Ms. Gleason's statements regarding Plaintiff's functional limitations. (Id.) Plaintiff also argues that the ALJ failed to explicitly reject or accept Ms. Gleason's testimony. (Id.) The Court disagrees with Plaintiff's contentions.

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ is not relieved of his obligation to comment upon lay witness

testimony simply because he has properly discredited the Plaintiff's testimony. To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." Id. Similarly, the mere fact that the lay witness is a relative may not be a valid reason alone for rejecting lay witness testimony. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); but see Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness).

The ALJ's failure to address the witness' testimony generally is not harmless. Curry v. Sullivan, 925 F.2d at 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability). In failing to address a lay witness' statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

Here, the ALJ considered and discredited the lay witness testimony of Ms. Gleason. (Administrative Record ("AR") at 251.) The ALJ provided:

> Statements in the E section of the file submitted by Neva Gleason, the claimant's aunt credibly establish no different conclusions. She said that the claimant cooks breakfast, is able to take care of all self-care activities, cooks lunch, goes to the parole office, takes out the trash, uses public transportation, grocery shops and visits with his grandmother. She said the claimant handles stress better since he was put on medication.

(Id.) Prior to the discussion of Ms. Gleason's statements, the ALJ analyzed Plaintiff's testimony and found "[Plaintiff's] activities of daily living as recited in

the record clearly support the ability to perform at least light work activity." (Id.); see infra, Discussion, Part III.C. Thus, Plaintiff's claim that the ALJ failed to accept or reject Ms. Gleason's statements is without merit; the ALJ found that Ms. Gleason's statements "establish no different conclusions." (AR at 251.)

As to Plaintiff's contention the ALJ selectively evaluated Ms. Gleason's testimony, any error by the ALJ is harmless, as the ALJ would not have reached a different disability determination had he explicitly considered all of the testimony. Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885. This is because in rejecting Plaintiff's credibility, the ALJ essentially rejected the testimony of Ms. Gleason, which was cumulative of Plaintiff's own testimony regarding pain and functional limitations. (AR at 75-82, 215-52); see supra, Discussion, Part III.C. Plaintiff indicated that he suffered from many of the same limitations as reported by Ms. Gleason in his disability function report, daily activities questionnaire, and during the hearing. (Id. at 64-71, 75-82, 522-24, 529-37.) The ALJ explicitly rejected Plaintiff's subjective symptoms of pain along with his daily activities to conclude that Plaintiff could perform at least light work activity. (Id. at 251.) Thus, Ms. Gleason's statements regarding Plaintiff's pain and physical restrictions were cumulative and would not have affected the disability determination. Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885.

Ms. Gleason also testified that Plaintiff's condition affected his ability in the areas of concentration, understanding, following instructions, and getting along with others. (AR at 75-82.) She indicated that Plaintiff had a short attention span and could perform simple work. (Id.) Here, Ms. Gleason's opinions regarding Plaintiff's mental capacity are consistent with the ALJ's finding that Plaintiff should be limited to "routine, repetitive entry level tasks involving objects rather than people." (Id. at 251.) Even if inconsistent as to Plaintiff's mental capacity, the ALJ rejected Plaintiff's credibility by considering evidence of daily activities, his adopted lifestyle, and lack of psychiatric treatment to support his disabling

contentions. (Id.); See infra, Discussion Part III.C.

Based on the foregoing, the Court finds that the ALJ provided sufficient reasons germane to the witness for giving Ms. Gleason's statements less weight. To the extent that the ALJ committed any error in explicitly addressing the testimony, the Court can confidently conclude, that under these circumstances, no reasonable ALJ considering this case would have reached a different conclusion. Thus, the ALJ's error, if any, was harmless.

**B.** **The ALJ Properly Considered the Opinion of the Consultative Physician.**

Plaintiff contends the ALJ failed to consider the mental limitations assessed by consultative physician, Dr. H.M. Skopec. (JS at 8-10.) The Court disagrees with Plaintiff's contention.

### 1. Applicable Law.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at

751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

### 2. **Analysis.**

On February 19, 2008, Dr. Skopec assessed Plaintiff's mental limitations after reviewing his medical history. (AR at 433-48.) Dr. Skopec indicated that Plaintiff was moderately limited in the following areas: (i) ability to understand and remember detailed instructions; (ii) ability to carry out detailed instructions; (iii) ability to maintain attention and concentration for extended periods; and (iv) the ability to interact appropriately with others. (Id. at 433-34.) As to Plaintiff's mental functional capacity, Dr. Skopec opined that Plaintiff is able to: (i) understand, remember and perform simple and some more complex tasks; (ii) sustain pace, concentration and persistence to sustain unskilled and semi-skilled work in a forty hour workweek; and (iii) adapt to changes in the workplace. (Id. at 434.) He also opined that Plaintiff is not impaired in his ability to interact with the

public, supervisors, and co-workers. (Id.) Finally, Dr. Skopec concluded that Plaintiff suffers mild limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. (Id. at 444.)

Plaintiff argues that Dr. Skopec's assessment as to Plaintiff's moderate limitations are "equivalent to a significant limitation that would greatly impact Plaintiff's mental capacity." (JS at 9.) Plaintiff fails to cite to, and the Court is unaware of, any authority to support this proposition. Moreover, the ALJ explicitly adopted the findings of Dr. Skopec as to Plaintiff's concentration, persistence, or pace. (AR at 250.) The ALJ stated, "[I]t is more reasonable to adopt the findings of the board-certified psychiatrists . . . who found moderate limits in this domain . . . ." (Id.) Thus, the ALJ considered, and even adopted, Dr. Skopec's findings.

Even if the ALJ erred in considering all of Dr. Skopec's testimony, any error here is harmless. Curry, 925 F.2d at 1131. The ALJ assessed Plaintiff's mental residual functional capacity ("RFC") as follows: "Mentally, the claimant is limited to routine, repetitive entry level tasks involving objects rather than people." (AR at 251.) The ALJ's mental RFC finding is more restrictive than the findings proposed by Dr. Skopec. For example, Dr. Skopec assessed no limitation in interacting with the public, supervisors, and co-workers. The ALJ, on the other hand, limited Plaintiff to jobs with little social interaction. (Id. at 434, 251.) Additionally, Dr. Skopec opined that Plaintiff was moderately limited in performing detailed tasks. The ALJ limited Plaintiff solely to simple tasks. (Id.) Consequently, the ALJ adopted more restrictive limitations than Dr. Skopec, making any error by the ALJ harmless. Thus, remand or reversal is not warranted for this claim.

C. **The ALJ Properly Considered Plaintiff's Testimony and Properly Assessed His Credibility.**

Plaintiff also contends that the ALJ failed to provide specific and legitimate

reasons for rejecting Plaintiff's subjective complaints of pain or other non-exertional limitations. (JS at 8-11.) The Court disagrees with Plaintiff's contention.

### 1. **Applicable Law.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

(3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

SSR 96-7p[4] further provides factors that may be considered to determine a claimant's credibility such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

2.     **Analysis.**

Here, the ALJ partially discredited Plaintiff's subjective symptoms for several reasons: (i) Plaintiff's claims were not supported by a record of psychiatric treatment; (ii) Plaintiff's adopted lifestyle; and (iii) Plaintiff's daily activities were inconsistent with his allegations of disabling pain. (AR at 251.)

First, the ALJ based his adverse credibility determination based on the lack of psychiatric treatment in the record. (Id.) The ALJ stated:

The claim[ant] is only [a] partially credible witness. The claimant is not

---

[4] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

10

seeking any psychiatric treatment at the current time and at the hearing
he relied mainly on his physical problems and specifically his gout.

(Id.) The record supports the ALJ's contention. Plaintiff testified that he was not seeking counseling for his psychiatric limitations during the hearing. (Id. at 533.) Plaintiff also fails to point to evidence of psychiatric treatment in the record. Moreover, there is no evidence of sustained counseling, hospitalization, or psychiatric medications to support Plaintiff's disabling contentions. Thus, the objective medical evidence does not substantiate Plaintiff's allegations of disabling symptoms.

As to Plaintiff's adopted lifestyle, the ALJ stated:

He lives with his aunt and does very little during the day and said that he must elevate his legs four or five times a day. He has no interest, attachment or motivation to work and has not even looked for work. His choice to lead a completely unproductive and indolent lifestyle enabled by continued receipt of general relief is not required by any demonstrated pathology of record and is purely by his own choice.

(Id.) The ALJ reasonably questioned Plaintiff's lack of motivation to seek employment to cast doubt on his trustworthiness. (AR at 251, 523, 530, 532); see also Osenbrock v. Apfel, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (ALJ may discredit a claimant's testimony regarding subjective symptoms due to the claimant's "self-limited" activities and lack of motivation)). The record supports the ALJ's contention, as Plaintiff only worked a few jobs for brief periods of time (AR at 240-41), and Plaintiff received public assistance while living with his aunt. (Id. at 529-31.)

Finally, relying upon Plaintiff's own description of his daily activities, the ALJ found Plaintiff not be a credible witness and discredited the severity of his subjective complaints. (Id. at 251.) According to Plaintiff's own statements and

testimony, he was able to perform household chores including vacuuming and taking out the trash; he was also able to groom himself, manage his finances, shop for groceries, cook daily, and travel using public transportation. (Id. at 64-71.) The Court finds that the ALJ could properly rely on Plaintiff's daily activities, such as, *inter alia*, completing household chores, cooking, and shopping, to support his adverse credibility determination. See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may properly rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's subjective symptoms and to discount his credibility. Thus, there was no error.

**D.    Reversal Is Not Warranted Based on the ALJ's Alleged Error to Consider Plaintiff's Obesity.**

Plaintiff appears to argue that the ALJ failed to consider obesity in arriving at the decision of non-disability. (JS at 17.) The Court disagrees.

Generally, where there is evidence of obesity, the ALJ must determine the effect of the plaintiff's obesity upon his other impairments, his ability to work, and his general health. See, e.g., Celaya v. Halter, 332 F.3d at 1181; see also SSR 02-01p (requiring an ALJ to consider the effects of obesity at several points in the ALJ's evaluation). In Celaya, the Ninth Circuit held that it was error for an ALJ

not to develop the record on an obesity condition when that condition was likely a partial basis for the claimant's disability, or could exacerbate her reported illnesses, and where the claimant had proceeded *pro se* and likely never knew that "she *could* assert obesity as a partial basis for her disability." Celaya, 332 F.3d at 1183.

In Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), the Ninth Circuit distinguished its holding in Celaya, reasoning that the ALJ had no duty to consider the represented plaintiff's obesity because there was no indication in the record that her obesity exacerbated her other impairments. Burch, 400 F.3d at 682. The court noted that there was no evidence before the ALJ, and none in the record, indicating that Burch's obesity limited her functioning; there were no treatment notes or any diagnoses addressing her limitations due to obesity; the record was silent as to whether and how her obesity might have exacerbated her condition; Burch did not specify which listing she believed she would have met or equaled had her obesity been considered; and she did not present any testimony or other evidence at the hearing that her obesity impaired her ability to work. Id. at 682-83. Moreover, unlike the claimant in Celaya, Burch had been represented by counsel throughout the proceedings. Id. ("[m]ore significantly, Burch was represented by counsel.").

The facts in this case closely resemble those in Burch. Represented by counsel throughout the proceedings, Plaintiff presented no evidence that his obesity limited his functioning, exacerbated his severe impairments, or was otherwise disabling. See id. at 682. In fact, Dr. Samuel Landau, a medical expert, testified that despite Plaintiff's obesity, he was still capable of performing work within the ALJ's assessed RFC. (AR at 252, 528.) Moreover, the ALJ noted that Plaintiff's self-reported daily activities suggest at least the performance of light work. See supra, Discussion, Part III.C. The ALJ explicitly considered Plaintiff's obesity, finding that Plaintiff could still perform light work. (AR at 252.) This is not enough for this Court to find error. See, e.g., Burch, 400 F.3d at 683 (holding that there was no reversible error in the ALJ's failure to consider the represented

plaintiff's obesity where the only evidence in the record consisted of notes from doctors observing weight gain, indicating obesity, and recommending a medically supervised weight loss program). Nor does Plaintiff set forth any evidence which would support the finding that his impairments met or equaled a Listing when obesity is included. Id. (plaintiff bears the burden of proving the impairment meets or equals the criteria of a listing; ALJ's failure to consider equivalence not error where claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing). As in Burch, there simply is no evidence in this record of any functional limitations as a result of Plaintiff's obesity that the ALJ should have, yet failed, to consider.

Based on the foregoing, the Court finds there was no error in the ALJ's consideration of Plaintiff's obesity.

**E.** **The ALJ Sustained His Burden of Proving There Was Other Work in the Economy that the Plaintiff Could Perform.**

Plaintiff argues that the ALJ erred in determining Plaintiff could perform the following jobs: electronic assembler, hand packer, and packing machine operator. (JS at 17-19.) Plaintiff further argues that these jobs require a greater reasoning level than he can perform. (Id.) The Court disagrees with Plaintiff's contention.

Here, the ALJ determined Plaintiff's RFC as follows:

[T]he claimant has the residual functional capacity to perform light work . . . except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walk two hours out of eight, sitting six hours out of eight and no pushing or pulling activities with the lower extremities, no work requiring balancing, crouching or crawling and no more than occasional stooping, climbing stairs two times per day or lifting objects above shoulder level with the left upper extremity. Mentally, the claimant is limited to routine, repetitive entry level tasks

14

involving objects rather than people.

(AR at 250-51.) Given Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") determined that Plaintiff could perform the following jobs: (i) electronics assembler (see U.S. Dep't of Labor, Dictionary of Occupational Tables ("DOT"), § 726.684-018; (ii) hand packer (DOT § 920.587-018; and (iii) packing machine operator (DOT §920.685-078). (AR at 538-39.) All three occupations proposed by the VE require a reasoning level of two. (DOT §§ 920.587-018, 726.684-018, 920.685-078.) In support of the finding of non-disability, the ALJ adopted the VE's findings and determined that Plaintiff could perform these jobs, all existing in significant numbers in the national economy. (AR at 253.)

A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). Reasoning development is one of three divisions comprising the General Educational Development ("GED")[5] Scale. DOT App. C. The DOT indicates that there are six levels of reasoning development. Id. Level three provides that the claimant will be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT App. C § III. Level two provides that the individual will be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from

---

[5] The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." DOT App. C.

15

standardized situations." Id.

The Court finds that the DOT's reasoning development level two requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only simple, routine work. Meissl, 403 F. Supp. 2d at 984-85 (finding that reasoning development Level two does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); see generally Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that reasoning development Level two appears to be more consistent with plaintiff's RFC of "simple and routine work tasks"). As noted above, Plaintiff fails to cite to, and the Court is unaware of, any authority to support the proposition that Plaintiff's moderate limitations are equivalent to significant limitations. See supra, Discussion, Part III.B.

As explained by the court in Meissl, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things: "short and simple instructions" and "detailed" or "complex" instructions. Meissl, 403 F. Supp. 2d at 984. The DOT has many more gradations for measuring this ability, six altogether. Id. The court explained:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Id.

Furthermore, the term "uninvolved" in the DOT level two explanation qualifies the term "detailed" and refutes any attempt to equate the Social Security Regulations' use of the term "detailed" with the DOT's use of that term. Id. The Meissl court also found that a plaintiff's RFC must be compared with the DOT's reasoning scale. A reasoning level of one suggests the ability to perform slightly

less than simple tasks that are in some sense repetitive. For example, they include the job of counting cows as they come off a truck or tapping the lid of a can with a stick. Id. The ability to perform simple, repetitive instructions, therefore, indicates a level of reasoning sophistication somewhere above level one. See, e.g., Hackett, 395 F.3d at 1176 (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"). The DOT's level two definition provides that the job requires the understanding to carry out detailed instructions, with the specific caveat that the instructions be "uninvolved" – that is, not a high level of reasoning. Meissl, 403 F. Supp. 2d at 985.

Based on the foregoing, the Court finds that the ALJ sustained his burden of proving there is work in the economy that Plaintiff can perform. Thus, there was no error.

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: January 5, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge